## PENNSYLVANIA SYSTEM BOARD OF ADJUSTMENT OF BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES v. PENNSYLVANIA R. CO. et al.

(District Court, E. D. Pennsylvania. December 21, 1923.)

No. 2869.

1. **Master and servant ⬤69—Determination of jurisdictional questions by Labor Board not reviewable by courts.**

It is within the province and lawful power of the Railroad Labor Board to determine the existence of the jurisdictional facts upon which its right to function rests, including the decision as to who are the representatives of the parties to the dispute, and its determination of such questions is not reviewable by the courts.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Injunction ☞104—Refusal to comply with order of Labor Board not unlawful conspiracy, which may be enjoined.**

Under the law creating the Railroad Labor Board, either party to a dispute before the board has a legal right to accept or reject its decision, and the failure or refusal of the parties on one side to comply with an order of the board cannot be charged as a conspiracy to do an unlawful act, or to defeat the policy of the law, which will give a court jurisdiction to restrain acts in violation of such order by injunction.

In Equity. Suit by the Pennsylvania System Board of Adjustment of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees against the Pennsylvania Railroad Company and others. Decree for defendants.

Henry T. Hunt, of New York City, and Robert J. Sterrett, of Philadelphia, Pa., for plaintiff.

John Hampton Barnes, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. This cause was called for hearing on a motion for a preliminary injunction. At the conclusion of the hearing it was agreed by counsel that the plaintiff should have of record all the exhibits referred to in the bill and certain other exhibits brought into court, which should be regarded as proofs by the plaintiff, and that the case should be determined as on final hearing upon bill, answer, and proofs, the latter consisting of the plaintiff's exhibits.

The cause behind this case is of the greatest importance because it has part in the relations of employer and employees, and questions are raised, the answers to which may carry the greatest consequences, because they affect not merely the relations of large and important classes, but also because every one has an interest in those relations being harmonious. It thus becomes worthy of the fullest discussion. This is the due also of the counsel who have argued it with fullness, clearness, and considerateness.

The evidentiary facts of the case as mere facts are not in dispute, and yet, as is almost always the case, where controversy exists, not over the facts, but over the inferences to be drawn from those facts, or, in other words, over the ultimate fact findings, adequate discussion of them is always long, because they present so many different phases. Newton's famous apple fell from the tree. That was of no consequence in itself, nor would it take long to state the fact; but the discussion of the why and wherefore of its fall has been continued to this day, and has just taken a fresh start. It has been said that no more than a dozen minds in the world have the capacity to even follow the development of the theory of what gravitation is, and perhaps not more understand the labor problem. Those outside the ranks of the chosen 12 are usually content to take refuge in the oracular judgment (slightly amended) of a famous character in Silas Marner: "You are both right and both wrong, as peoples always is."

After several vain attempts to keep the discussion within manageable limits, we have concluded to restrict this opinion to a statement of the questions presented and the conclusions reached, omitting the

more discursive statement of what has led us to these conclusions, content with the knowledge that no one would read it anyhow, unless he was paid to do so.

The plaintiff's assertion of a cause of action is based upon the charge of a conspiracy. We thus start with the well-worn definition that the defendant's objective must have been an unlawful thing, or, if lawful, the means of its accomplishment must be unlawful. This, however, is a false start, because we must go back of this. The cause had its beginning as litigation in proceedings before the Labor Board. That tribunal gave the plaintiff all which it was within its power to give. A court can do no more. No clear and fair-minded man would expect more. It has been authoritatively ruled that the Labor Board (if the analogue is acceptable) has authority to render a judgment, but has no power to issue execution. Often, in determining what questions in a cause are presented for decision, it is an aid to learn what are not to be decided. The question would suggest itself at once: Is the plaintiff invoking the aid of the court to enforce a judgment of the Labor Board? There is no such question before us, because the very capable counsel for plaintiff disclaims all thought of asking us to do this, as they frankly admit such aid cannot be given. We have thus made one step.

The next step is to inquire of the plaintiff what it is they do ask. The answer is that Congress has provided the machinery for the settlement of all labor disputes (affecting interstate commerce) through a reference of them to the Labor Board, and that the defendant has conspired to thwart this declared purpose of Congress. Stated more fully, Congress, by a series of enactments, including the interstate commerce, the transportation, and the Labor Board statutes, has declared a policy of the law, the carrying out of which the defendants have conspired together to obstruct, and the Code pronounces any conspiracy to obstruct a policy of the law to be unlawful. The right to relief is thus disclosed, and we have made a start.

It is always well, however, in starting on any voyage, to know for what port we are bound. To learn this we must again return to the starting point. The Labor Board is a tribunal differing widely and radically from a court. It exercises in a measure judicial functions, and yet the questions with which it concerns itself are not justiciable, as the courts define such questions. In at least one respect the Labor Board has a far broader and wider jurisdiction than any court. There is a truth, which is worthy of statement, that there is such a thing as something which a man ought to have in the popular sense of right and justice, which yet is far beyond that to which he has a legal right. The distinction is sometimes expressed in the phrases "natural justice" and "legal justice." The effort, of course, is to keep them in consonance; but it cannot always be done. A court, again, of course, is limited and restricted to the award of legal, or, what is the same thing, equitable rights. It can grant to a litigant no more than this, although the individual judge or judges who compose the court may think on other than legal grounds he ought to have much more. The Labor Board, on the other hand, is under no such limitations or restrictions. It may

take into its consideration everything, whether of a legal, ethical, economic, social, civic, humanitarian, or altruistic value.  In other words, it does not give to the parties before it merely that to which they have a legal right, nor require of them only what they are legally bound to do; but it calls upon each to yield to the other all which, with everything taken into consideration, ought to be yielded, regardless of the strict legal rights of either.

We all recognize, in all the relations of life, claims upon us far in excess of any mere legal claims.  Apply this to the special problem with which the Labor Board has to do—disputes between employed and employer.  All parties would without doubt admit that they ought in this broad sense to do everything they reasonably could be asked to do to end the dispute by an agreement.  This, however, is not always possible, because persons may honestly differ without blame to either, and most surely they may differ after one of them has made every concession which any one would ask of him.  Congress has, because of the interest of the public in such disputes, gone one step further, and declared that, if they cannot or will not adjust the dispute, then the Labor Board shall adjust it for them by adopting as the basis for a settlement anything which the board deems to be fair and reasonable.

It is too clear for words that no court could make such an award. The Labor Board, on the other hand, has far less power than a court. A court, although it can award to a litigant only that to which he has a legal right, has the power to see to it (within practicable limits) that he gets what is awarded him.  The Labor Board has no such power. The judgment it may render may be acceptable to neither party, but each has the legal right to accept it or refuse to follow it.  If the parties refuse acquiescence all that the board can then do is to give publicity to its ruling, leaving the parties to their willingness to adjust the dispute under the guidance and perhaps the stress of public opinion, influenced, or it may be aroused, by the opinion of the board.

The difference between the two tribunals may be summed up in the phrase that the aim of the Labor Board is high, but it may miss its mark; the aim of a court is much nearer the earth, but it hits the bull's eye almost every time.  There is another feature which should be kept before us.  Congress had in mind the usual precursors of a strike in the refusal of one or both parties to confer or their failure to agree after conference.  It also had in mind that the employees might all belong to a labor organization, or to several different unions, or all might be unorganized, or that some be organized and some not. There was likewise recognition that the number of employees would forbid a conference, except through representatives.  Provision in consequence was made for representatives of all the above classes to meet in conference, and, if they do not agree, further provision was made for a reference of the dispute to the Labor Board.

This brings to the surface what may be called the jurisdictional facts—the necessity of authority in some one to decide upon the existence of these facts, the necessity of a hearing and the appearance of all parties through these representatives before the board in order that

it might function, and·the question of the validity of any election at which representatives were chosen, or, in other words, who were representatives. The defendant company from the beginning has maintained and still maintains a position which may be summed up as follows:

There is and has been no dispute of which the Labor Board could take cognizance, in that the relations of the company with its employees are harmonious, and that the wage scale and working conditions are such as are acceptable to both the company and its employees. To promote this harmony and assure its continuance, the company has always been willing to consult its employees and confer with them on any subject affecting their employment. The only practicable method of doing this is through a conference of representatives. Recognizing that, because of prevailing living conditions and for other reasons, a readjustment of wages and working rules might be desirable, the company, when control of its property was returned to it after government administration was ended, chose its conferees and arranged for a plebiscite, so that conferees to represent the employees might likewise be chosen. Such an election was held, and following it a conference was had, through which all matters affecting wages and working conditions were adjusted to the satisfaction of all.

The position of the plaintiffs is in sharp conflict with the general tenor of this statement and its details. In their view there is a wage dispute, which calls for adjustment through a finding of the Labor Board, and that the asserted settlement, through a conference, was such only in form, as no real representatives of the employees were a party to it, and further that the machinery of election set up by the company was a mere pretense to hide the real purpose, which was not to submit the decision of the dispute to the arbitrament of the Labor Board, and thus to escape the consequence of a finding by the board.

[1] We may interpose here a further observation. It has been authoritatively ruled for us that it was within the province and lawful power of the board to determine the existence of the jurisdictional facts upon which its right to function rested, and that this power included the decision of who were the representatives of the parties to the dispute, thus of necessity drawing into the cognizance of the board the validity of the election held. It has likewise been ruled that it has been given to no court to sit in review of the findings made by the board acting within the powers conferred by Congress. This is a good reason for us to refrain from adding any fact finding, other than the one which concerns the question submitted to us. This fact is that the Labor Board sustained the plaintiff in every issue raised before it.

### The Questions Here Raised.

If the concept which the plaintiff has of the policy of the law was the true concept, we could easily follow the argument of their counsel to its conclusion. In a sense, and a real sense, it is the true concept, but not in the sense which would lead to the conclusion drawn. The plaintiff's concept is that Congress has declared the policy of the law

to be that labor problems which concern interstate commerce shall be adjusted at a conference between representatives of the employer and of the employed, and, failing this, shall be referred to the Labor Board, whose decisions shall be accepted by the parties.

We have said that acceptance of this as the true concept of what the policy of the law is carries with it the plaintiff's right to the relief for which they pray, because the Labor Board has fully performed is duty, but its action has been in part frustrated by the refusal of the defendant company to (as we have found the fact to be) submit itself to the jurisdiction of the board and to accept of its arbitrament, thus bringing about the defeat of this policy of the law; there being no denial of the further fact that all the defendants had part in what would in this view be an unlawful conspiracy.

The broad inquiry thus becomes one into the correctness of this statement of what is the policy of the law, and the question to be decided likewise becomes whether a court should by injunctive process command the defendant company to withdraw from its attitude of unwillingness to submit itself to the arbitrament of the Labor Board, or, what is the same thing, by like process enjoin the defendants from the continuance of all acts through and by which the company had thus far made its resistance to the control of the board effective.

## Discussion.

[2] Plaintiff's concept of the policy of the law ignores the distinction between motive and purpose. We have no doubt that, because of the public concern with labor disputes, it was the purpose of Congress to lend every aid which it was thought to be wise to extend toward the settlement of such disputes, and we entertain as little doubt that those who voted for the bill, which constituted the Labor Board, did so in the hope, and perhaps also in the expectation, that all parties concerned would accept and yield to all decisions rendered by the board, whatever the sacrifice of their legal rights. This gives us the legislative motive. It is just as clear, however, that Congress did not exact obedience to the rulings, but left all parties in the full enjoyment of all their legal rights, including the right to accept or reject. As such refusal was the objective of the charged conspiracy, it follows that there was no conspiracy to do an unlawful thing. Had the attitude of the parties been reversed, and the defendant company had wanted the assistance of the board (as it might and may still yet want it), the ways and means adopted for the accomplishment of its wishes, or, in other words, its acts and conduct would have been precisely what they have been, but no one would have thought of charging them with an unlawful conspiracy because they were doing a lawful thing in an unlawful way. There would have been doubtless even then the theoretical possibility that one or more of the specific acts done were unlawful, but into this we need not go.

The plain truth of the whole matter would seem to be that the only legal right which the plaintiff has is a right to an expression of the opinion of the Labor Board that under all the circumstances and con-

siderations affecting the subject-matter they ought to have more than the strictly legal rights which belong to them, although even this does not belong to these plaintiffs eo nomine, but to the employees of the defendant company. This right has already been given them by the award of the Labor Board, and no court can grant them more than their legal rights.

We have given one mode of statement of what the real question before us is. The different modes of statement possible are limitless in number. We will venture upon one more. We know, because it had been so ruled, that the Labor Board cannot impose its views upon the defendant company, so as to make acceptance compulsory, inasmuch as there is no legal obligation on the defendant company to accept. We know, in the same way, that no court can, for the same reason, impose such obligation upon the defendant company, and we are not asked to do this.

The proposition now, however, advanced is that the defendant company is guilty of an unlawful act in not accepting the views of the board respecting what the defendant company should do, and all the defendants combined in committing the acts which were done in furtherance of such unlawful purpose. Our difficulty is in recognizing the presence of the element either of lawfulness or unlawfulness (otherwise than in its negative form) in what the defendant did or refused to do, or in its every act, or in any part of its conduct. We do recognize that there is the broader question of whether (regardless of its legal rights or obligations) the defendant company was right or wrong. The Labor Board has passed upon this, and, if the analogue is helpful, there has been an appeal taken to another tribunal, the court of public opinion. All which concerns us is that an appeal to this court is not the legal right of either party.

## Order.

The decree filed herewith is accordingly made, dismissing the bill, with costs, etc.